UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLELE BIOTECHNOLOGY AND PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> REGENERON PHARMACEUTICALS, INC., <br><br> Defendant. | Case No. 7:20-cv-08255 (PMH) (AEK) |

### [PROPOSED] ESI DISCOVERY ORDER

The parties agree to the following provisions regarding discovery of electronically stored information ("ESI") in this case.

1. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

2. **E-mail.** E-mail production requests shall identify the custodian, search terms, and time frame. Each requesting party shall limit its e-mail production requests to a total of eight custodians and fifteen search terms for all such requests. The parties may jointly agree to modify these limits without the court's leave.

    a. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term

unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged.

        b.        The parties agree that: (1) the Plaintiffs will provide separate proposed search terms covering the period of March 1, 2013 through January 1, 2020 and then from January 1, 2020 through June 1, 2021; and (2) Defendant's proposed search terms will cover the period of January 1, 2010 through June 1, 2021.

        c.        After a party has performed the email search requests, it shall promptly inform the requesting party of the number of hits generated for each combination of custodian and terms. The parties shall promptly meet and confer thereafter to determine whether any search terms should be revised or replaced in light of the volume of email files that resulted from the search request.

        d.        The reasonableness of the email requests shall be jointly determined based on the number of hits generated by the search result. The parties will negotiate in good faith to identify ways to reduce hits for any given search term.

        e.        Upon request, a party shall promptly provide a log of any requested emails or attachments for which a privilege is claimed. The parties agree, however, that neither side shall be required to log privileged documents that are dated after October 5, 2020. Pursuant to Federal Rule of Evidence 502(d), the production of any document or thing over which a privilege or protection may be claimed will not constitute a waiver of any such privilege or protections by virtue of its disclosure in this court and is also not a waiver in any other federal or state proceeding. The mere production of email in a litigation as part of a mass production shall not itself constitute a waiver for any purpose. This provision is intended to provide the full scope of protection available under Federal

Rule of Evidence 502(d). Any request for the return of material over which a privilege or protection is claimed shall be made pursuant to the Protective Order.

3. **Deduplication.** A party shall only produce a single copy of a responsive document. Each party shall remove exact duplicate documents (*i.e.*, documents with the same content) to reduce the unnecessary cost of reviewing and producing exact duplicate documents. Data shall be de-duplicated on a global level. Names of custodians of copies of files eliminated due to global deduplication shall be provided in the "Duplicate Custodian" field (see Paragraph 11 below) accompanying the original file.

4. **Format.** The parties shall produce all documents existing in electronic format in single-page, Group IV tagged image file format ("TIFF") or searchable PDF format, or equivalent, in accordance with the following:

    a. TIFF image files or PDF files shall be produced along with Concordance/Opticon load files linking the images or PDFs to the corresponding document that indicate the beginning and ending of each document. Each file shall be named according to the unique corresponding Bates number associated with the first page of the document. Each file shall be branded according to the Bates number and any necessary confidentiality designation as provided in the Protective Order. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    b. Extracted text, to the extent it exists, should be provided in document-level text files. Where no extracted text exists, or where extracted text may include privileged or protected material which has been redacted from a production document, OCR generated text should be provided in document-level text files.

  c. The parties shall produce email attachments sequentially after the parent email.  With respect to an email chain, the parties shall produce the longest unique chain and the parties do not need to separately produce the lesser-included emails unless those lesser-included emails include unique attachments not included in the longest chain.  If a lesser-included email includes a unique attachment, then the lesser-included email must be separately produced with the attachment.  The parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, third party confidentiality obligations (until consent is received or a court orders otherwise), immunity or privacy laws, or as otherwise permitted by this Order or the written agreement of the parties.  Non-substantive images embedded in emails (*e.g.*, images or logos in email signatures) will not be treated as attachments nor separately produced.

  d. When producing documents under this Order, the parties shall keep document families intact.  For the purposes of this Order, a "document family" is a collection of pages or files, constituting a logical single communication of information, but consisting of more than a single stand-alone record.  One example of a document family is an email (the parent) containing an attachment (the child).

  e. Each document image shall contain a footer with a sequentially ascending production number.

5. **Native files.**  When it is impracticable for an electronic document to be produced in the manner prescribed by Paragraph 4.a, such as for spreadsheets, databases, or computer code, or including because any information contained in the document would be omitted,

distorted, reorganized, or otherwise made more difficult to read or understand than the document's native format, a party may produce the document in its native format.

      a.    A party may request the native version of any email or attachment to be produced under this Order, and the parties agree to respond to reasonable and specific requests for the production of files or file types in native format where appropriate. Notwithstanding the foregoing, a party may produce a document in a non-native format where production in native format would result in the production of privileged or otherwise non-discoverable information. A party shall not make unduly burdensome and unreasonable requests for the production of documents in native format, and a party shall not unreasonably refuse a request for the production of documents in native format. If a dispute arises with regard to requests for the production of files or file types in native format, the parties will meet and confer in good faith to try to resolve it.

      6.    **Requests for high resolution or color documents.** A party may request that documents that are color documents as kept in the ordinary course of business be produced as color images (JPEGs) or in native format, and the parties shall respond to reasonable and specific requests for production of color documents in such format where appropriate. The parties shall respond to reasonable and specific requests for the production of higher resolution images. Nothing in this Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution images, the parties will meet and confer in good faith to try to resolve it.

7. **Images with poor legibility.** If a document is originally produced in an illegible or difficult-to-read form, the producing party shall have the option of responding by producing a native-file version of the document or producing a replacement image of legible quality. If a dispute arises with regard to requests for legible images, the parties will meet and confer in good faith to try to resolve it.

8. **Foreign language documents.** All documents shall be produced in their original language. All extracted text must be produced in a Unicode-compliant format in the load file. Nothing in this Order shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery, unless the translation was prepared in the course of business, and not for litigation.

9. **Materials requiring different production format.** If particular documents or materials warrant a different format from that described in Paragraphs 4-8 above, then the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties shall not degrade the searchability of documents as part of the production process.

10. **Custodian.** Regardless of the format of the documents, the parties shall identify each individual from whose files documents are produced under this Order.

11. **Metadata.** The parties agree that document image load files should include, where applicable, the metadata fields listed below, to the extent reasonably feasible. The parties are not obligated to produce metadata for any document that does not contain such metadata in the native version of the document at the time the document is collected. The parties are not obligated to produce metadata that contains privileged information. The parties reserve the right

to object to any request for the creation of metadata for documents that do not contain metadata in the original:

- Custodian,
- Duplicate Custodian (if applicable),
- Email Subject,
- From,
- To,
- CC,
- BCC,
- Date Sent,
- Date Received,
- Time Sent,
- Time Received,
- Filename,
- Author,
- Date Created,
- Last Modified,
- File Extension,
- File Size,
- MD5 Hash,
- Control Number Begin (or the equivalent thereof),
- Control Number End (or the equivalent thereof),
- Attachment Begin (or the equivalent thereof),
- Attachment End (or the equivalent thereof)

Dated:  **July 7**, 2022  
      **White Plains, New York**

SO ORDERED.

_____  
**Hon. Philip M. Halpern**  
**United States District Judge**